141581 Fordham Motor Company v. United States Fordham Motor Company v. United States Ford brings this NAFTA refund appeal from the CIT's third dismissal of Ford's claims. In the last appeal, this Court held that 19 U.S.C. 1520d governs all post-importation claims for duty-free preference. That statute requires the presentation of a certificate of origin within one year, but this requirement may be waived, and that Customs has waived the CO presentation requirement for all 1520d claims filed through the Reconciliation Program since 1998. This Court left one narrow question on remand. Whether Customs denial of Ford's 1520d claims filed outside the Reconciliation Program before it existed was arbitrary, where the sole ground given was that Ford's certificates of origin were presented more than one year after importation. More than 15 years into this case, the reason Customs articulated on remand has never been written in any document. According to Customs... Well, I mean, you may be right about that. I mean, I'm having some difficulty in this case because it's had such a long history, and we tried to go back and look at what exactly was argued by whom when, and it's quite confused, but you're not arguing right that Customs... I guess the question is, are you arguing that there's some sort of waiver here, that Customs was not free to make the arguments it's backed up here with because of something it said or did or failed to do early on? I think I am arguing that in one sense. I think the question on remand was, what was reason Customs could come up with in 2013 for denying Ford's claim? Under Olympic adhesives v. United States, this Court said, and an agency may not, of course, shift the grounds it relied upon for taking action. The grounds upon which an agency order must be judged are those upon which the record discloses... No, no, that's fine, but I don't understand how that necessarily applies here because this was the first time, I think, and you know the record better than I probably, but this issue was presented. I mean, we said... So we weren't saying Customs can't come up with a post hoc rationalization. We were allowing them the opportunity. I mean, they didn't give a rationale. They did what they did, and that was historic, and then the question is what basis, if you had a reasonable basis to have done that. Correct. They're free, are they not, to come up with a basis for having done that? I think they are free to explain what that basis was, not to make up a new reason. The reason that Customs gave in denying the protest was that there is no authority to waive a CO presentation, that a CO is required and a 1520D claim... Yeah, but the issue wasn't before that. I mean, the issue wasn't before them in the previous panel thought was relevant and they ought to address. The issue before them was the CO on the non-reconciliation. Correct. So I guess I'm not getting the extent to which there's any kind of way... I mean, they were free, were they not, to go back, once we've asked them to go back, and explain to us what this reconciliation program is, which is something separate, different at least, than what they were relying on in this case, right? I think they were free, again, to offer an explanation for why reconciliation is different. And I think if we boil that all down, what the answer they gave was, in reconciliation we have record-keeping penalties, and we don't have that outside of reconciliation. And that has never been articulated. Customs has never taken the position that it... It seems to me that what Customs is arguing is that the reconciliation program is based on a wholly different statutory scheme than 1520D, the NAFTA duty drawback clause. And because of that, that the processes by which are afforded to a claim under the reconciliation program versus one under 1520D, that they're different. And they're different because they have different statutory schemes. It seems to me that that's their argument. But when you ask the question, how are they different? They say, well, the safeguards are different. Can you address that? Is there a difference between the safeguards that are afforded, the procedural safeguards afforded under 1520D versus the reconciliation program? There is no difference in the procedural safeguards between the reconciliation program and 1520D claims filed outside the reconciliation program. The NAFTA Article 505 states that importers must maintain records. NAFTA Article 508 requires penalties where customs laws are not complied with, including NAFTA. 1508 is written very broadly, requires any importer who does any import to maintain any document pertaining to that importation or a declaration in a 1520D claim, whether it's made in a reconciliation program or made through the electronic... Customs seems to be arguing that when we waive the presentation of a certificate of origin under the 1520D process, it's gone and lost forever. We can never go back and require the importer to come up with the certificate of origin. Is that your view of how the customs procedures under NAFTA operate? Not at all. I think this is a fundamental problem that the CIT had in adopting customs position that the only waiver authority it has for 1520D is of possession. Customs says once we waive possession, it's gone forever. The importer doesn't have to maintain it. But Ford had possession and Ford didn't ask... Let's go back to that issue. Is it the case that if they waive the presentation of a NAFTA certificate of origin that the importer is not required to maintain or to keep records with respect to that certificate? That is not true. If customs waives the presentation of any document related to an importation of goods, especially a document that's listed on the A1A like the CO is, then that importer shall maintain it, shall produce it upon request, and shall be subject to customs as early as 1996 and then again in 97 and 98. Before this claim was ever filed, Ford said under 181.22 A and B, we'll maintain them and we'll give them to you if you need them. So even if customs... That's why I say this isn't the reason customs has ever given. Ford said, we'll give them to you on request. We'll give them to you in electronic format. We'll give them to you however you want them, whenever you want them. We just want you to just like you're going to do in reconciliation and we'll follow exactly the same procedures. So that's what customs does today and if you look at their directive, their directive say an importer's obligations are to possess the CO at the time the declaration of preference is made, to maintain that CO, and to produce it to customs upon request. There is no exception given for claims made in the reconciliation, outside the reconciliation. There is nothing discussed in the directive about how that post-importation claim is filed. So another argument that customs is making that I don't quite understand, maybe you can help out with this, but I'm interested in seeing what Ford's response is. It seems that customs is saying under reconciliation, once an importer flags a particular customs transaction, it becomes an entry and they say that with quotations, it's an entry. But is it not the case that under 1520D, once you finish that commercial transaction and you ask customs to, you pay the duties and you ask, and then later you seek the refund, is that not also an entry? It is exactly still an entry and 1520D, if you look at the language of it, 1520D says that it authorizes customs to re-liquidate an entry, that is the original entry. So these are all entry documents and this court has distinguished, Judge Newman in the dissent in the previous appeal stated that at entry, related to an entry, in connection with an entry, these are all just words that customs uses interchangeably for importation related documents. And that's how customs describes it in the A1A list, customs states that an importer is required to maintain these documents and shall produce them upon request and those documents include a CO. So it is an entry related document and that's what 1520D does. So is a bond required or any type of surcharge required for an entry under 1520D? A bond is not required for a re-liquidation of an entry under 1520D filed outside the reconciliation program. It is not a principle distinction to say that a bond is required under reconciliation and not outside because the bond is applicable for liquidated penalties if an importer does not file a 1484B reconciliation. This is not a 1484B reconciliation of duty, rate, or classification. So it is only applicable where the importer owes more money or fails to file a 1484B reconciliation. It does not apply to a 1520D claim reconciled through the reconciliation program and customs specifically says even if you flag it for NAFTA, if you decide not to, no problem, no penalties, the only consequence is you may not file a 1520D claim. So customs describes all of the post-importation refund claims. But when you filed the 1520D claims, you paid the duties. Correct. And you paid the non-preferential rate. Correct. So exactly. So Ford has already paid the duties for these goods 18 years ago in 1997 and Ford has been seeking a refund of those duties. So when you get a bond, basically what you're saying is I want a bond to protect customs for payment of the duties. If I don't pay the duties, then customs is covered. Correct. But under 1520D, they're covered anyway because duties have been paid. They already have the money. And the only penalty for not filing a reconciliation of a 1520D if you flag it is you don't get the refund. But they already didn't give Ford the refund here even though when customs said you must produce the COs, Ford produced them. The other thing that customs states is that it has this risk of a loss of revenue. But the first time customs ever told Ford that the COs would be rejected more than one year after entry was after they already had the COs. So there was no risk of loss of revenue. And moreover, 1592 provides that the minimum penalty if customs determines that an importer has claimed preference fraudulently or with gross or regular negligence even, the minimum penalty under 1592 is to restore the duties that were lost. So there is no risk of a loss of duties. There is no risk of a loss of money no matter how the 1520D claim is filed, whether it's traditionally filed or through the reconciliation program. Okay. You're into rebuttal. Why don't you stay while we hear from the government. Thank you. Mr. Kenney? Good morning, honors. Edward Kenney for the government. With me is Beth Brotman from U.S. Customs and Border Protection. The lower court here correctly sustained customs remand report. Customs remand report reasonably explained the difference between waivers and traditional 1520D claims and waivers with 1520D claims made through reconciliation. Reconciliation brings in a whole different grouping of statutes, 1401, 1484, 1508, 1509, and allows benefits to the importing public for a number of customs issues, including value, certain classification issues, and 1520D. At the end of the day, there's really no difference between a reconciliation and a duty drawback under 1520D, is there? At the end of the day, you look at a customs transaction and you go, what do we have here? Are any duties owed or not? And reconciliation, you reconcile the records, and under 1520D, isn't it the case that you determine whether you do have something that's originating or not or what the appropriate duties are? You're right. Essentially, they get the same benefit. However, reconciliation is a greater vehicle for getting – there's more opportunities for a type of importer who can use that. It's electronic. It's fully electronic. Also, you can do up to 9,999 reconciliations in one reconciliation. So it's a great benefit for an importer who can use that. It also has the assurances that customs needs, and that is the imposing of a continuous bond with the rider, that in the event that there is issues with the reconciliation – So what difference is between the bond under the reconciliation program and the duties paid under 1520D? Well, since the importer – there's a waiver of – in reconciliation, it does become a – reconciliation, it triggers a statute, 1401, that makes it a reconciliation. In terms of coverage of the risk, that's what I'm asking. What's the difference? The difference is there's no other – if you enter the reconciliation program and there is any sort of issue with regard to whether or not that was a valid reconciliation, going back, whether or not – when you said you possess it, you can't get it. In terms of the bond. It's just easier. It's easier to – In terms of the bond, is there any difference between the bond that's provided in the reconciliation program in terms of the risk to customs? Well, the risk would be according to the terms of the bond. The bond requires a specific rider for the reconciliation program. That's not available in any other customs-type bond. But under the reconciliation program, customs wants to make sure they get paid the right amount of duties, correct? Right. And isn't that true also? When you do the duty drawback process under 1520D, you want to make sure – customs makes sure that they're getting paid the right amount of duties. 1520D is separate from the duty drawback, but it's another duty preference program. 1520D, there is no bond associated with 1520D. Not a bond, but they pay the duties. In this case, it didn't afford – in fact, they paid the non-preferential rate. So they had paid already the regular duties. With the expectation later on, we'll come back and we'll get our money back and show we're entitled to the preferential rate. Yes, but the bond comes into effect when the duty deferral, when the money is given back to the importer. If it's later looked at, that's the difference. With 1520D traditional, according to 181.22, that's the only waiver available under traditional 1520D programs. The port director has to be convinced that that is a – And now you're talking about waiver. And I'm asking you because what this customs report says, it says that there's a difference and there's procedural safeguards that are available under one program and not the other. Yes. And I'm asking about the safeguard about where the customs gets its money under the reconciliation program simply because you have a bond. So in a 1520 traditional one, let's say the port director was convinced as to that entry, as to an entry the importer has convinced him that it was an originating good. He weighs in writing the requirement for a NAFTA CO. There's money given back. It's reliquited and money is given back. If lo and behold, information turns out that that was untrue, it wasn't an originating good, all that's really left is to do a penalty action or other things like that which entails a lot of work and effort. But in this case, they paid the maximum duty. Yeah, but I'm talking about at reliquidation of the 1520, the money is given back. But if that turns out to be wrong, then there is no coverage for customs. In reconciliation, there's a reconciliation bond with the writer attached to it. And if the money is given back and it later turns out that that was incorrect, that can trigger that customs continuous bond. It's only available in reconciliation. So there's the exception. Peter Kennedy, is this a case having broad significance or is it pretty much limited to Ford and these entries? Well, this case is a 1520 D traditional case. And reconciliation, these entries did not come in under reconciliation. This court asked for an explanation as to the difference between waivers given in traditional versus waivers given in 1520 D through reconciliation. 1520 D in reconciliation program involves a lot of different NAFTA, CAFTA, and different programs that use 1520 D. So while it's hard for me to understand what Ford is asking here, do they want 1520 D taken out of reconciliation? Do they seek just to have the same type of 181.22 type of waivers that are available in traditional? That would have an impact. If there's something from the court, although I think the court would be if it were necessary. I don't think that Ford has made that argument, Counselor. No, but the outcome of what they're asking for here, that somehow a waiver in reconciliation is different or ultra-virus or wrong is not – there could be an outcome in that manner, and that's not beneficial to the importing community or customs. The way and manner that reconciliation has been pronounced through the Federal Register and how it's carried out is beneficial to the importing public and beneficial to customs. There are assurances, and the difference is because you're talking about certificates of origin now being entry documents because the unique thing about reconciliation is that it does bring in the Statute 1401, which creates an entry. Outside of the reconciliation program under 1520 D, is not the certificate of origin also an entry document? There is an entry document, but it's not in 1520 D at importation. The importer doesn't even know whether his good is an originating good, so it's not a necessary or he's not even thinking about it maybe at that time. But in the regulatory framework? There is a list, the A1A list, and the A1A list does have – as the origination of that. But that A1A list in the regulation says that it not only has to be a list, but it has to be necessary for the entry of that good. When it first comes in, if you're doing the traditional program – Let's back up a little bit. The NAFTA requires certain record-keeping requirements, correct? Yes. And in order to get preferential treatment under NAFTA, you have to have an originating good. Yes. And part of the records that the three countries agree that all parties are going to keep are all the records that go to establish whether you have an origination or not, whether you have an originating good or not. There's content requirements, production costs, change in tariff classification, all these other things that go on to figure out a rule of origin. But there's a separate paragraph that specifically requires certificate of origin. Your Honor, I'm not saying that there's not other protections. There are certain protections that overlap 520D in reconciliation. That's the problem. I don't see – you're saying that customs says there's safeguards that are available under the reconciliation program and they're not available under 1520D. I agree with what you just said. There's overlapping safeguards. But there are greater safeguards in reconciliation, and that's a big difference for customs. There's greater safeguards because the customs is now they're reconciling a lot, potentially a lot. Tell us explicitly what those greater safeguards are. Because now that we're considering the NAFTA CO to be an entry document, that entry document is now a required document, and that according to 1509G, if that document is requested and not given, you can reliquidate that entry to undo the preference to get the money back. And that is not the case with respect to non-reconciliation? That's not the case. You can go 592. You can do some other things, but not as easy. You also can trigger the continuous bond. You can deny NAFTA treatment for future imports. Yes, but we're talking about issues where the preference has already been granted and it's already out the door. The money has already been given back. But later on it's discovered that that was wrong or erroneous. There are greater opportunities to correct that in NAFTA reconciliation, and that's because reconciliation is treated as an entry and you could use those laws to a greater extent. And you can reliquidate upon a demand for that document that doesn't get satisfied. Under 1520D, if Customs realizes later on that they made an error and they should not have refunded duties because, let's say,  it's a document, are you saying that Customs is without recourse to go back and get that money? I'm not saying they're not without recourse, but it's going to be a lot harder because now you have a court director waiving in writing the requirement for possession of that document and presentation. So one procedure safeguard is harder than the other. They're not different. Point us to a couple of differences in safeguards that exist in the reconciliation program but not under 1520D. I believe the crucial safeguards are the continuous bond, that assurance of having a continuous bond, and the fact that in reconciliation it's actually a new entry and can be reliquidated easily because in the 1509 segment it is now considered an entry document. And if you demand it and they can't produce it, it could be reliquidated against the preference. So that's a big assurance for Customs. Those are two big assurances for Customs. And it benefits everyone. It benefits not only Customs but the ability to do this, to give Customs some extra assurances, gets the importer another opportunity to get NAFTA preference up to 9,999 entries, and the ability to waive the presentation but not the possession at that point, that's not available in 520D. Now, it's a reasonable option. There's another area of confusion that I have with Customs' response, and it seems that they're saying that under reconciliation we have an entry and the certificate is part of the entry documentation. And they're saying so that means that we can go back anytime and reliquidate and ask for the certificate back, but we can't do that under 1520D. And they're saying once we waive the requirement, the deadline, it's gone forever. We can never go back and request the certificate of origin. Is that true? As a practical matter, yes, because you've waived it in writing as I was explaining. Doesn't that already do the entire NAFTA? I mean, isn't a primary requirement or objective of the parties to ensure that the preferential benefits remain within the free trade area and that you don't have third countries coming in as free riders? So one way to make sure you do that is to tell people, we'll give you preferential benefits, but you've got to maintain records for five years. That's exactly the case, Your Honor, because under 1520D we're talking about a narrow waiver ability and you really have to convince the port director and you have to get him in writing. He's got to put himself out on a limb. This is a originating good. He has to be satisfied. I mean, if you take a look at the entry here, there's not even a statement in the JA on this that this was a NAFTA originating good. One of the criteria that's necessary, but there's no C of O. So, I mean, would a port director issue a waiver when the actual petition for 520D doesn't even have the statement on it? Probably not. It didn't happen here. But it's a limited waiver in 520D and it is protecting the root cause of NAFTA of, is this an originating good? Now, customs can, you can get a penalty and start a penalty auction. It's a harder thing to do, but it can be done. It's easier in reconciliation because it's a give and take. We also have a verification process, correct? The so-called verification jump teams where one country can go into another and verify the records of another. That's true. I'm not disputing that that's available. Does that safeguard exist under the reconciliation program? I think it overrides all programs. No, no, I'm asking, does it? Yeah, yeah. But the availability of day-to-day assurances to customs is right there in the certificate or in the continuous bond that can be levied upon when it's not, when reconciliation, it turns out, has been inappropriate or information should not have been, if they say under reconciliation that I have possession, it turns out that's not true. Customs now has the assurance of having a customs bond that they could get that money back, that was a give back. But the programs, these different programs, NAFTA preference at entry originally, if you have actual possession of the bonds, of the NAFTA CO at entry, that's one way to get NAFTA preference and that's if you make a statement and have possession at entry. If it's one of the undetermined factors at entry and you don't want to post a continuous bond, you have 520-D available to you and within a year, within 12 months, you can get that now. In the facts of this case, Ford did not enter the goods claiming NAFTA treatment. They entered it under the general tariff. Yes. Right? So they paid the maximum duty that they would pay and with the expectation, we'll come back later on and show that these are originating. If that's true, right. If that's, you know, when they came in, right, they're just coming in under the general tariff for that good. So the customs director doesn't sit there and say, okay, I'm going to let you do that. No, because they don't even know at that time. Perhaps they can't get the information that they need to make the statements or anything because there has to be a statement. You have to verify the statement that this is an originating good. But if you don't have that information available, you can't do that. Before reconciliation, you have 520-D and 520-D, you have to present within the 12-month time period along with, you have to make the claim, then you have to present the NAFTA CO and there's very limited waiver ability. One of them being, you have to convince the court director. If you don't get that, you have to produce it. There's no two ways about it. Reconciliation was another option that was created. But these entries here that we're dealing with are 520-D claims and there's been no waiver. And I know that they were saying that it's arbitrary or precious not to have granted. I believe I heard that from Ford during this argument. But there's nothing underlying in this case about that. You can look at the, what's in the JA is the actual petition. It doesn't have the statements made. There's been, as Customs said, there was no presentation of the NAFTA CO here. And this is a regular traditional 1520-D claim. Final thought. My final thought is what does Ford want out of this case? And does Ford want a waiver when this court has already looked at the fact that there was no waiver granted to Ford and therefore there was no, I mean, there's not even, there's a request to change the program, but there's not a request for a waiver for the entry. There's a request to not have to abide by seriatim entries before reconciliation came up. And there was no such waiving of that system was granted. And therefore they just didn't bring on the NAFTA CO, give the NAFTA CO to Customs. That claim is, as this court originally, the lower courts stated, that's a failure to state the claim of a 1520-D claim. Customs has enunciated its position on reconciliation and the benefits of that. But if you can't give a waiver to Customs here, you know, I don't see what Ford is asking for. Do they want 520-D taken out of reconciliation? That can't be the way. Okay, well why don't we ask Ford. Thank you. Ford is not asking to have reconciliation, to have 1520-D taken out of reconciliation. Okay, so in order to find in your favor, what would be, would we have to say that because here, we sent it back for the purposes of deciding whether or not Customs had some basis for having a different program under reconciliation. You're suggesting we should say no, there's no basis for a difference, it was unreasonable, and therefore. And therefore, because Customs has announced an exception to the requirement that a CO is produced with a 1520-D claim within one year, that is for all reconciliation claims, they have to have a reason to not grant that exception here, and they don't have a reason. Well, no, okay, I get that. But wouldn't we be compelled, wouldn't we really be holding something broader, which is the same requirements of lack thereof with respect to waivers under reconciliation automatically apply to all entries under 1520-D? I don't think the Court has to go that far, because in this case, the facts are so unique, right? So in this case, it was after reconciliation was announced, but before it was implemented. Ford requested a waiver and offered to comply with recordkeeping and audits. So you're suggesting we write an opinion that creates one exception to 1520-D that surrounds precisely the activities in your case and no other? I am saying that's all the Court has to do, is to find that Customs' denial of Ford's claims was arbitrary and capricious. The Court doesn't have to say, and Customs may never deny an exception again. It just has to say, under these circumstances, where Ford was diligently trying to comply with this burdensome paper process, we agree, reconciliation makes sense. And it makes sense to waive the presentation because Customs always has the authority to request and punish  To read from Customs' directive. But no, that's why I don't understand. I mean, I thought you were necessarily advocating for a broader rule. Well, I think that the broader rule does make sense. And what is the broader rule? I think the broader rule is that Customs may waive the presentation of a CO with a 1520-D claim within one year, subject to an importer's obligation to maintain and produce them upon request. And that's what Ford did here, was it told Customs we will maintain and produce them upon request, and when Customs says produce them, Ford produced them. It was only after Ford produced them in June of 1999, when Customs was holding the document, that it said we're not going to take them. It's too late. So in this case, it's arbitrary. Could there be another case? Could they announce a new, as they did in Westar and Green Tree, could they announce a new rule going forward? We are never going to waive it traditionally, and we don't think you have to keep the document because we're never going to waive it. I think Customs has to decide, if there's an exception to presentation in 1520-D, as there is, then what's the reason for not granting it to Ford here? The risk of loss of money isn't a real risk of loss. By the time they denied the claim, they had the COs, and they had, as Ford argued in the protest, you had enough information without the COs to grant Ford's claim, and Customs says that may be so, but we don't have the authority. And we know that's not true. They do have the authority to process Ford's claim, and the refusal to do so here is what was arbitrary. If we order that Customs refund the overpaid duties to Ford, are you entitled to interest? Yes. All right. Time has expired. We thank both counsel and witnesses today.